UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMVAC CHEMICAL CORP., | ) | No. 1:05-cv-02203-RWR |
|  | ) |  |
|  | ) | DEFENDANTS' SCHEDULING |
| Plaintiff, | ) | REPORT |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| U.S. ENVIRONMENTAL PROTECTION | ) |  |
| AGENCY, *et al.*, | ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

INTRODUCTION

By order dated January 13 and filed January 17, 2006, the court set an initial scheduling

conference for January 30, 2006, and directed counsel to "confer and submit no later than five

business days in advance of the conference a joint written report reflecting their proposal for the

schedule upon which this case should proceed." Because of an oversight, counsel did not confer

until January 26, 2006. The conference of counsel did not produce agreement with respect to "the

schedule upon which this case should proceed." Accordingly, counsel agreed that each side

would submit a separate scheduling report. Defendants' report is as follows.[1]

BACKGROUND

By letter dated September 16, 2004, the Natural Resources Defense Council (NRDC)

submitted a request to the Environmental Protection Agency (EPA) under the Freedom of

---

[1]On January 17, 2006, an entry reading as follows was added to the docket in this case:
"ORDER setting initial scheduling conference for January 30, 2006 at 11 a.m. Signed by Judge
Richard W. Roberts on 1/13/06." Defendants' undersigned counsel did not infer from this entry
that the referenced order provided anything more than that a scheduling conference had been set
for the referenced date. Accordingly, he did not become aware until January 26, 2006, that he
and plaintiff's counsel had been directed to confer and to submit a joint scheduling report.
Defendants' undersigned counsel apologizes for his confusion.

Information Act (FOIA), 5 U.S.C. § 552, for certain records pertaining to three pesticides. On February 17, 2005, NRDC brought suit against EPA and its acting administrator to compel compliance with its FOIA request and to obtain other relief. *NRDC v. Johnson*, No. 1:05-cv-00340-RMU (D.D.C.). On November 10, 2005, AMVAC Chemical Corp. (AMVAC) commenced this action against EPA and its administrator to enjoin the release of certain material responsive to the FOIA request that NRDC had submitted to EPA. AMVAC considers that material to be confidential business information (CBI). CBI is exempt from production under FOIA Exemption 4, 5 U.S.C. § 552(b)(4).

DISCUSSION

A redacted copy of the records alleged by AMVAC to contain CBI is attached as Ex. A. Withheld from Ex. A are two pages that defendants have submitted to AMVAC for a determination as to whether AMVAC considers those pages to contain CBI. As is shown by Ex. A, the total amount of material alleged to be CBI is small.

Whether EPA acted properly in determining that the alleged CBI was appropriate for release is an issue to be determined on the administrative record under the "arbitrary and capricious" standard of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). *See Reliance Elec. Co. v. CPSC*, 924 F.2d 274, 277 (D.C. Cir. 1991). In this case, the administrative record consists of two letters submitted to EPA by AMVAC in support of its CBI claim and EPA's written determination of that claim. Accordingly, this action can be resolved on cross motions for summary judgment. To accommodate the schedule of defendant's undersigned counsel, defendants asks that the parties be given 60 days to file such motions. Neither party needs discovery.

2

In conjunction with their motion for summary judgment, defendants intend to present to

the Court, for inspection *in camera,* an unredacted copy of the records attached as Ex. A, marked

to show the material alleged to be CBI.  The *in camera* inspection will show – and show instantly

– that none of the material alleged to be CBI merits that designation.

Defendants do not consent to the transfer of this case to a Magistrate Judge.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General
KENNETH L. WAINSTEIN
United States Attorney

ELIZABETH J. SHAPIRO, DC Bar 418925
DAVID M. GLASS, DC Bar 544549
Attorneys, Department of Justice
20 Mass. Ave., N.W., Room 7140
Washington, D.C.  20530
Tel: (202) 514-4469/Fax: (202) 616-8470
E-mail: david.glass@usdoj.gov
Attorneys for Defendants

Dated: January 27, 2006

AMVAC CHEM. CORP. V. U.S. EPA
NO. 1:05-cv-02203-RWR

DEF.'S SCHED. REP'T

EX. A

T-003   P.010/021   F-627

Apr-18-2005  04:09pm   From-K&LNG LLP                                           P.09

APR-18-2005  01:43        US EPA OGC                        T-428   P.002/004   P-160

# Kirkpatrick & Lockhart LLP

1800 Massachusetts Avenue, NW
Suite 200
Washington, DC 20036-1221
202.778.9000
www.kl.com

November 12, 2002

Barry M. Hartman
202.778.9938
Fax  202.778.9100
bhartman@kl.com

**VIA FACSIMILE**

Daniel M. Flores, Esq.
Environmental Defense Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 23986
Washington, D.C.  20026-3986

Re:    Amvac Chemical Corporation

Dear Dan:

I am writing as a follow up to our conversations of October 17, 2002, during which time you and your client advised us that it was ceasing all negotiations regarding resolution of potential claims by Amvac against various officials of the Environmental Protection Agency ("EPA"). As you know, these claims were raised as a result of certain public statements and threats made by your clients against Amvac earlier this year.

As I indicated during our conversations, we were disappointed by the manner in which you and your clients abruptly cut off discussions. As you know, following a meeting with both EPA and Justice Department officials in late June, we agreed that while a good faith effort to resolve our disputes was undertaken:

1.    Amvac would not take or initiate its threatened legal actions against EPA or its employees;

2.    EPA would not take any action under either the Federal Insecticide, Rodenticide and Fungicide Act ("FIFRA") or the Federal Food Drug and Cosmetic Act ("FFDCA"), as amended by Food Quality Protection Act ("FQPA"), to change the current status of DDVP;

3.    The Department of Justice would advise EPA and its personnel with responsibility for this program area not to make any public statements during this time period regarding the Agency's intentions with respect to the registration of DDVP.

DC-541537 v2 0307022-0100

Apr-18-2005 04:09pm    From-K&LNG LLP
APR-18-2005 21:43       US EPA OGC                                T-303  P.011/021  F-627
                                                                          P.18
                                                       T-473  P.003/004  F-183

## Kirkpatrick & Lockhart LLP

Daniel M. Flores, Esq.
November 12, 2002
Page 2

You specifically stated at the outset of our negotiations that such discussions were "unrelated" to the currently pending Croplife America, et al. v. EPA (No. 02-1057) (D.C. Cir.) litigation ("Croplife litigation"). After meeting several times in August, you asked that we continue our 'standstill' agreement while you met with parties in the Croplife litigation. You specifically asked us to withhold filing suit, and stated that you would continue the standstill agreement, and resume discussions with us after you met with these other parties. We agreed.

We waited patiently for six weeks, during which time we repeatedly extended the standstill agreement. Our most recent standstill agreement was scheduled to expire on October 15, 2002. You left a voicemail after close of business that day indicating that there would be no further discussions and that no further extensions of our standstill agreement would be forthcoming. During a follow-up conversation on October 17, you and your client said that you saw no prospect for settling with Amvac in the Croplife litigation, and therefore there was no need to continue discussions regarding Amvac's Bivens claims against individual EPA officials. You refused even to consider whether the claims we had discussed could be resolved independent of the Croplife litigation.

Since our discussions, we have been presented with information strongly suggesting that during this interim time period ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ As has been done in the past, this is being undertaken knowing that your clients are ignoring human data that, when properly considered, would establish that DDVP, when properly used in the home in the form of 'pest strips', does not present a danger to humans.

FIFRA requires that your clients consider suggesting all relevant data before invoking a regulatory process that you and your clients have admitted will destroy the market for DDVP. As we have emphasized in the past, and as your clients have acknowledged to us ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

CBI
552(b)(4)

Apr-18-2005  04:09pm    From-K&LNG LLP                                    +                          T-003   P.012/021   F-627

APR-18-2005  01:43         US EPA OGC                                                                            P.11
                                                                                       T-429   P.004/004   F-159

# Kirkpatrick & Lockhart LLP

Daniel M. Flores, Esq.
November 12, 2002
Page 3

We strongly urge you and/or your clients not to start again down the road that caused Amvac to consider its Bivens claim earlier this year.  For example, we urge you not to use the occasion of a 'Technical Briefing' or other public fora to make statements about EPA's views of the safety of DDVP pest strips that do not take into account the wealth of human data available.

█████████████████████████████████████████████        CBI
█████████████████████████████████████████████        552(b)(4)
█████████████████████████████████████████████

Sincerely,

Barry M. Hartman

Barry M. Hartman

co:    The Honorable Thomas Sansonetti
       Andrew C. Emrich

773E





CONTAINS CONFIDENTIAL BUSINESS INFORMATION
This document must be handled in accordance with
Agency CBI procedures under 40 C.F.R. Part 2

November 27, 2002

Via E-Mail and Hand Delivery

Christine T. Whitman, Administrator
MC: 1101A
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

      Re:    DDVP Pesticide Products -- Request for Stay of Agency Action
           Affecting Registration

Dear Administrator Whitman:

      Amvac Chemical Corporation writes to petition EPA ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ under the Federal
Insecticide, Fungicide, and Rodenticide Act (FIFRA), ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓



doc [280 24]

4695 MacArthur Court, Suite 1250, Newport Beach, CA 92660 • (949) 260-1212 • Fax (949) 260-1214



## CONTAINS CONFIDENTIAL BUSINESS INFORMATION
This document must be handled in accordance with
Agency CBI procedures under 40 C.F.R. Part 2

Christine T. Whitman, Administrator
November 27, 2002
Page 1



      In addition, Amvac believes that FIFRA requires EPA to consult with the U.S. Department of Health and Human Services ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ on DDVP pesticide products, given their critical public health uses. DDVP pest strips, for example, effectively and uniquely combat, in indoor spaces, mosquitos that cause life-threatening diseases of significant current concern to the American public.

      We would welcome an opportunity to meet with you and your staff to discuss our concerns and the need for a stay at your earliest possible convenience. We look forward to your prompt response to this request.

      Please note that this document is claimed to constitute Confidential Business Information and may not be publicly disclosed. This document must be processed in accordance with the regulations for Confidential Business Information at 40 C.F.R. Section 2.201 *et seq.*

      Thank you for your attention to this matter.

                 Sincerely,

                 Eric G. Wintemute

                 Eric G. Wintemute
                 President

09LT001c.doc [280 24]



## CONTAINS CONFIDENTIAL BUSINESS INFORMATION
### This document must be handled in accordance with
### Agency CBI procedures under 40 C.F.R. Part 2

Christine T. Whitman, Administrator
November 27, 2002
Page 2

cc:    Mr. Stephen L. Johnson (via e-mail)
        Ms. Marcia E. Mulkey (via e-mail)
        Mr. James J. Jones (via e-mail)
        Ms. Lois A. Rosi (via e-mail)

09LT001e.doc [280 24]

773F



December 2, 2002

<u>Via E-Mail</u>

Mr. Stephen L. Johnson
Assistant Administrator
Office of Prevention, Pesticides, and Toxic Substances
MC: 7101
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

        Re:    <u>DDVP Pesticide Products</u>

Dear Steve:

        Thank you for your letter dated November 27, 2002   Amvac plans to respond initially to your request for materials on Thursday, December 5, 2002, which we calculate to be five working days from the date of our receipt of your letter, the deadline for such a submission that you established in your letter.  Please let me know immediately if you disagree with our calculation of the due date.



        Amvac has a long history of working with EPA to address concerns that EPA has raised about DDVP products 

        I note that you should have received a copy of Amvac's request to Administrator Whitman, which I sent the same day your letter came to my office.



09LT001_doc (280.24)

4695 MacArthur Court  Suite 1250  Newport Beach  CA  92660 ∙ (949) 260-1212 ∙ Fax (949) 260-3714



Mr. Stephen L. Johnson
December 2, 2002
Page 2

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ This letter, and Amvac's planned December 5, 2002, submission are not intended to supersede or otherwise affect that request.

　　　Thank you for your response to my November 21, 2002, letter. I look forward to EPA's response to our December 5, 2002, submission and hope that it, along with our November 22, 2002, and November 27, 2002, submissions, provide a basis for a meeting between Amvac and you and your staff.

　　　　　　　　　　　Sincerely,

　　　　　　　　　　　Eric G. Wintemute
　　　　　　　　　　　President

cc:　　Administrator Whitman (via e-mail)
　　　Ms. Marcia E Mulkey (via e-mail)
　　　Mr. James J. Jones (via e-mail)
　　　Ms Lois A. Rossi (via e-mail)

TOTAL P.03

7739


# AMVAC

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
This document must be handled in accordance with
Agency CBI procedures under 40 C.F.R. Part 2

December 5, 2002

Via E-Mail

Mr. Stephen L. Johnson
Assistant Administrator
Office of Prevention, Pesticides, and Toxic Substances
MC: 7101, Room 3130 East
U S. Environmental Protection Agency
1201 Constitution Avenue, N W.
Washington, DC 20460

      Re:   DDVP Pesticide Products

Dear Steve:

      Amvac submits this letter and the attachments to it as its initial response to the request for information you made in your letter dated November 27, 2002 [1] Described below are the materials Amvac is submitting today and the materials that Amvac plans to submit Moreover, there are a number of important pending items that we think EPA must address and on which EPA should allow Amvac to comment before EPA properly can proceed with the risk assessment process; these also are outlined below.

*Information Submitted Today*

      Amvac submitted today to EPA the first two studies listed below; courtesy copies will be provided to you tomorrow, as the weather conditions in Washington, D.C made it impossible to provide them to you with this letter The third document is appended to this letter

---

[1]    Eric Wintemute, Amvac's President, indicated in his December 2, 2002, response to your November 27, 2002, letter that Amvac would make this initial submission

09LT003_doc [280 24]

4695 MacArthur Court, Suite 1250, Newport Beach, CA  92660 • (949) 260-1212 • Fax (949) 260-1214



Mr. Stephen L. Johnson
December 5, 2002
Page 2

Amvac believes these documents further support the conclusion that critical DDVP uses meet all applicable EPA standards for registration

1. *A Re-Analysis of Observations on Occupants of Arizona Homes Containing 20% Vapona Insecticide Resin Strips (Arizona II Home Study)*: This study, prepared by Exponent and others, demonstrates that the human NOEL following chronic exposure to DDVP, conservatively measured, is up to 0.05 mg/kg/day, based on a <20% inhibition of red blood cell cholinesterase  This value was estimated using data from families, including both adults and children, undergoing their normal day-to-day activities within the home  Only the inhalation component of DDVP exposure was taken into account in this study  The additional dietary, dermal, and non-dietary oral components of exposure were not included, so this NOEL is an underestimate of the true exposure value  This study also shows that children in the Arizona II Home Study were no more sensitive than adults to exposure to DDVP

2. *Humans and Laboratory Animals Appear Equally Sensitive to the Cholinesterase Inhibiting Effects of Dichlorvos*: This study, prepared by Dr Judith MacGregor and Dr Susan Youngren, demonstrates that when all of the available DDVP data are considered, humans are not more sensitive than animals to DDVP and that there is no enhanced sensitivity of healthy children to DDVP  Accordingly, a 10-fold safety factor is more than sufficient to account for both interspecies and intraspecies uncertainties  The use of a 10-fold safety factor is well supported by the unusually large human database.

3 *Acceptable Residential Pest Strip Uses Based on Animal Data Only:*: This analysis, prepared by Dr. Susan Youngren, demonstrates that using EPA's assumptions regarding exposure, with the corrections noted, and looking only at the animal data, many critical DDVP uses meet EPA registration standards  The acceptability of these products using only animal data further supports Amvac's request that EPA defer any further action on DDVP until the NAS review of the human data issue, and the EPA process following it, are complete.  This is particularly important given the critical uses of DDVP against pests that carry diseases of significant current concern to public health

09LT003_doc [280 24]



Mr Stephen L. Johnson
December 5, 2002
Page 3

*Information to Be Submitted*

Amvac is working on, and plans soon to submit to EPA, the following documents:

1    *DNT Studies:*   Amvac is sponsoring the studies that EPA required
     pursuant to its data call-in notice on developmental neurotoxicity for
     DDVP   Amvac anticipates that these studies, which are scheduled now
     for submission to EPA in November 2003, will further support the lack of
     a need for an extra uncertainty factor that the Food Quality Protection Act
     requires when there are not reliable data establishing for a particular
     pesticide chemical that the margin of safety without that extra uncertainty
     factor will be safe for infants and children. The preliminary studies that
     were submitted to EPA recently support this conclusion, and Amvac
     anticipates that the work now being done and scheduled for later
     submission will likewise support this conclusion.

2    *Human Studies:*   Amvac will submit, for EPA's convenience, copies of
     the existing human studies on DDVP in Amvac's possession.   It is
     Amvac's understanding that EPA, or its predecessor agencies, have had
     many of these studies for years; many also are in the published literature

3    *Benefits of DDVP Use:*   Amvac will submit a summary of the many
     critical public health uses of DDVP.   DDVP has unique applications
     against pests that are spreading disease of significant concern to the
     public, such as West Nile virus, malaria, and the bubonic plague   DDVP
     pesticide products are also critical to the safety of our nation's food supply
     in providing critical food warehouse insect control.

*Information That EPA Has Yet to Provide*

1.   *Review of Protocol for California Exposure Study:*   Amvac submitted to
     EPA early in 2002   the protocol, entitled "Indoor Air Concentrations of
     DDVP Using Pest Strips in Confined and Unoccupied Areas" that it had
     submitted to . California for conducting a study to determine "air
     concentrations of DDVP in adjacent rooms of homes as a result of use of
     small space pest strips in confined areas (closets, cupboards) or large
     space pest strip treatment of non-occupied areas of a home (garages, attics,
     basements)."

09LT003_ doc [280 24]



Mr. Stephen L. Johnson
December 5, 2002
Page 4

2    *Pet Collar Study*:  Amvac requested, in the Fall of 2000, to review the study EPA had relied on to characterize exposures to DDVP flea collars in the PRA   This study ("Influence of High Temperature and Low Humidity On Cats Wearing Single and Multiple Dichlorvos Flea Collar" dated 1977 by K R. van Kampen, D.R  Brooks, and S D. Allen of Shell Chemical Company) had been submitted to EPA by a previous registrant, prior to Amvac's involvement with this chemical   Pursuant to Amvac's request EPA, made the data available for Dr. Susan Hunter Youngren of Novigen to review in EPA's office in January 2001   Dr Youngren discovered that the study appendix containing the raw data was not available   EPA agreed to locate the missing data to and allow Amvac an opportunity to review and comment upon it.  To date, EPA has not made these data available to Amvac.

3.    *Discussion of Uses Other Than Residential Pest Strips*:  EPA promised Amvac representatives verbally at numerous meetings that EPA would schedule meetings to discuss Amvac's comments and concerns with EPA's assessment of uses other than residential pest strips   EPA also met with USDA and stakeholders with interests in non-residential uses in May of 2001 to discuss concerns with exposure assumptions.  EPA verbally agreed to continue these discussions.  No further discussions on any of these uses have yet occurred.  This exchange is critical to an adequate, scientifically defensible risk assessment   Mitigation measures, if any are necessary, cannot reasonably be developed with any credible scientific basis until these important issues are addressed

I wish to reiterate, as Eric Wintemute stated in his letter, Amvac's desire to work with EPA to address any EPA concerns   As Eric noted, Amvac has a long history of working with EPA ███████████████████████████████████ and I believe, as Eric does, that we can be successful in doing so again

We look forward to EPA's response to this December 5, 2002, submission and hope that it, along with our November 22, 2002, and November 27, 2002, submissions, provide a basis for a meeting between Amvac and you and your staff

09LT003_ doc [280 24]



Mr Stephen L. Johnson
December 5, 2002
Page 5

Sincerely,

*Ian S. Chart*

Ian S. Chart


cc:     Chrinstine T Whitman, Administrator (via e-mail)
        Ms  Marcia E  Mulkey (via e-mail)
        Mr. James J. Jones (via e-mail)
        Ms  Lois A. Rossi (via e-mail)

09LT003_doc [280 24]